UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEON WILSON,<br><br>      Plaintiff,<br><br>   v.<br><br>ALFONSO DAVID, PENNY GEORGE, MARY ANN, and MELISSA,<br><br>      Defendants. | Case No. 18-cv-1344-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Alfonso David's motion for summary judgment (Doc. 29). Plaintiff Deon Wilson has responded to the motion (Doc. 36).

This case arose after Wilson, an inmate at Vienna Correction Center ("Vienna CC") at all relevant times (he has since been released), saw Dr. David, a prison doctor, on February 2, 2018, about his feet. Wilson believes Dr. David was deliberately indifferent to his serious medical needs connected to his feet by failing to make a proper examination, prescribe him special shoes, and prescribe pain relieving measures. Wilson filed this lawsuit under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights.

### I.    Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520

F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

**II.     Facts**

Viewing all the evidence and drawing all reasonable inferences in Wilson's favor, the evidence establishes the following relevant facts for summary judgment purposes.

Wilson was transferred to Vienna CC on October 25, 2017. In his initial health care screening, he did not complain of foot pain or any other foot problem.

On December 29, 2017, Wilson asked that his family be allowed to send him shoes because his toes hurt from old fractures. The nurse who saw him at that time noted he had toe deformities with enlarged joints, flat feet, and redness at the prominences of his toes. In light of these observations, the nurse referred Wilson to the Health Care Unit ("HCU") administrator.

Dr. David saw Wilson on February 2, 2018, the one and only time he saw him. Wilson complained to Dr. David that his feet were hurting badly and were deformed. During the visit, Dr. David had Wilson take his shoes and socks off so he could perform a visual inspection of his feet. On visual inspection, Dr. David formed the impression that Wilson had no deformity other than a mild hallux valgus (a bunion on his left great toe). Dr. David reviewed an x-ray that had been taken on April 21, 2014, to determine if there was a problem not apparent in the visual inspection. He noted that the x-ray showed degenerative changes of the first metatarsal phalangeal joint (between the great toe and second toe) but was otherwise negative. Dr. David concluded that Wilson had no medical need for a new x-ray, a visit to a specialist, or special shoes. He instructed Wilson to follow up in the HCU as needed. Dr. David had no further

contact with Wilson.

Dr. David did not prescribe any pain medication or other pain relieving measures for Wilson on February 2, 2018, although he routinely prescribed mild overt-the-counter pain relief medications for inmates who complained of pain. Wilson was disappointed that Dr. David did not inspect his feet by asking him to lay on the table with his feet up, by inspecting his feet more closely, and by manipulating them. He also complains that Dr. David did not send him to a specialist, order a new x-ray, or allow him to have special shoes. In the absence of any prescribed pain medication, Wilson bought ibuprofen from other inmates. He did not purchase any from the commissary, although he had the funds and ability to do so.

He returned to the HCU on March 14, 2018, at Nurse Sick Call complaining of foot pain but was not seen because he refused to pay the required $5 co-pay. A nurse instructed him to return as needed. In the following seven months, he returned to the HCU five times although he did not complain about painful feet at any of those visits. In October, November, and December 2018, he visited the HCU again for foot pain and was prescribed ibuprofen and given an x-ray. In December, the HCU allowed him to have the pair of regular, non-medical tennis shoes his family had sent that were more comfortable than prison-issued shoes.

### III. Analysis

The Eighth Amendment's prohibition on the unnecessary and wanton infliction of pain forbids deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). It protects a prisoner from medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle*, 429 U.S. at 103; *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an

objectively serious medical need and (2) that the official knew that the medical need was serious but disregarded it. *Petties*, 836 F.3d at 728; *Johnson*, 444 F.3d at 584; *see Burton v Downey*, 805 F.3d 776, 784 (7th Cir. 2015).

An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson*, 444 F.3d at 584-85 (internal quotations omitted). A serious medical condition need not be life-threatening, but it should constitute "a denial of the minimal civilized measure of life's necessities." *Johnson*, 444 F.3d at 585 (quotations omitted).

An official is deliberately indifferent if he actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need."). To show a defendant was deliberately indifferent, the plaintiff does not need to show the defendant intended harm or believed it would occur, but he must show more than mere negligence. *Petties*, 836 F.3d at 728 (citing *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")). Indeed, a defendant can avoid liability by proving he was unaware of a risk, even if the risk was obvious. *Petties*, 836 F.3d at 728 (citing *Farmer*, 511 U.S. at 844).

Deliberate indifference can arise where a treatment decision was "blatantly inappropriate," *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotations omitted; treatment that is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment"); *see*

4

*Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006) (treatment is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment"); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (treatment was a "substantial departure from accepted professional judgment, practice, or standards").

    A.    <u>Special Shoes</u>

There is insufficient evidence from which a reasonable jury could find Dr. David was deliberately indifferent to any serious need for special shoes. Even assuming Wilson had a serious medical need for special shoes to accommodate his foot problems, he has alleged, at the most, negligence. He believes Dr. David's visual examination and consultation of a prior x-ray were not thorough enough, but this merely amounts to a difference of opinion on the proper way to conduct an examination, to form a diagnosis, and to assess the need for special shoes. No evidence suggests Dr. David's conduct and conclusions were so far afield of accepted professional standards of practice that they call into question whether he was actually exercising medical judgment. On the contrary, the evidence shows he diagnosed Wilson with a mild bunion but no other visible deformity and noted no remarkable problems based on the x-ray. His conclusion that Wilson did not require special shoes or anything else was within the proper exercise of medical judgment.

    B.    <u>Pain</u>

There is insufficient evidence to show that Dr. David's failure to prescribe pain medication, a routine activity, for Wilson was anything other than an isolated occurrence of negligence that does not amount to deliberate indifference. When the Court looks at an inmate's medical care to see if it was unconstitutional, it looks at the medical care as a whole, not at isolated instances. *Reed v. Ind. Dep't of Corr.*, 30 F. App'x 616, 619 (7th Cir. 2002). "A finding

that a defendant's neglect of a prisoner's condition was an isolated occurrence, . . . or an isolated exception . . . to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) (internal quotations and citations omitted).

Although Wilson complained of pain, Dr. David did not address that complaint or even note it in Wilson's medical file. However, it was clear at that time that Wilson could have purchased the same mild, over-the-counter pain medications from the commissary (and he actually *did* purchase them from fellow inmates) that Dr. David would have prescribed. Additionally, he could have, as Dr. David suggested, returned to the HCU for help with his foot pain. Had Dr. David repeatedly denied Wilson pain medication, such conduct might have amounted to deliberate indifference. However, Dr. David failed to respond to Wilson's complaint on one single occasion, when Wilson had alternative pain relief measures already available to him. And when he returned to the HCU for the pain, he refused to be seen because he did not want to pay the co-pay. He returned five more times but did not complain of foot pain, and in October 2018 when he did, a nurse prescribed ibuprofen. The Court does not think a reasonable jury could find Dr. David's one failure to prescribe pain medication to which Wilson already had access through the commissary or in his numerous other HCU visits amounts to deliberate indifference to a serious medical need as opposed to a lone instance of negligence.

Even considering the totality of Dr. David's examination, diagnosis, and treatment (or non-treatment, as the case may be) of Wilson, the Court cannot find that a reasonable jury could find him deliberately indifferent to Wilson's serious medical needs.

**IV.    Conclusion**

For the foregoing reasons, the Court **GRANTS** Dr. David's motion for summary

6

judgment (Doc. 29) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  August 26, 2020**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**